IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAVID E. KILEY,
    Plaintiff,

vs.                                    Case No: 5:06cv86/RS/EMT

DR. EFIONG ANDEM, C.H.O., et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 13). Leave to proceed in forma pauperis has been granted (Doc. 7).

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.* at 327, 109 S. Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923

(11th Cir. 1997). Upon review of the amended complaint, the court concludes that dismissal of this action is warranted.

Plaintiff is an inmate of Holmes Correctional Institution (HCI), and he has named five Defendants in this action: Dr. Efiong Andem, Chief Health Officer at HCI; Donovan Hamilton, Warden at HCI; Stan Bailey, Assistant Warden at HCI; Colonel Felicia Nobles, a correctional officer at HCI; and Pilar Gudino, Impaired Inmate Services Coordinator at the Florida Department of Corrections (DOC) (Doc. 13 at 1, 2).

Plaintiff alleges that he arrived at HCI on July 28, 2003 (*id.* at 9). On October 3, 2003, the Leon County Sheriff's Office took Plaintiff into custody (*id.*). While in their custody, on October 9, 2003, Plaintiff slipped in the shower and injured his back and shoulder (*id.*). When he returned to HCI, Plaintiff reported to the first available sick call on November 24, 2003 (*id.*). At the sick call, Plaintiff told Nurse Dobb how and when he injured his back and shoulder (*id.*). Plaintiff states that Dobb noted that Plaintiff had pain radiating from his neck to his shoulder and down the left arm, tingling in his fingers, and tenderness to the top of his shoulder, and Dobb referred Plaintiff to Dr. Andem (*id.*). Plaintiff saw Defendant Andem on December 2, 2003, and Andem disagreed with Plaintiff's medical explanation for his injuries (*id.* at 10). "[A]fter a very cursory examination," Andem told Plaintiff that nothing could be done and that Lake Butler Medical Center could not treat Plaintiff, and Andem prescribed Tylenol for fifteen days (*id.*).

During Plaintiff's fourth sick call visit on January 26, 2004, Nurse Howell noted that his left triceps muscle was smaller than the right (*id.*). On March 15, 2004 and April 6, 2004, Nurses Strickland and Miller noted visible atrophy; Miller recorded a one-inch difference between Plaintiff's left and right triceps (*id.*). However, when Plaintiff visited Dr. Andem, he ignored the progressive deterioration and prescribed mild pain medication (*id.*). Further, Andem ignored the x-ray of Plaintiff's cervical spine and refused treatment for Plaintiff's spinal injuries (*id.*). During the remainder of 2004, Plaintiff alleges that Andem "would consistently exercise action of willful and wanton disregard to Plaintiff's complaints of chronic pain and discomfort occurring throughout the muscle tissue in the areas of the neck, shoulder, and upper arm as described to him, not only by the Plaintiff, but by the nursing staff as well" (*id.* at 11). Further, Plaintiff states that Andem "blatantly

falsify's [sic]" Plaintiff's medical records and Andem's responses to the DOC Central Office regarding Plaintiff's grievances (*id.*).

Plaintiff filed informal and formal grievances but states that the administration simply forwarded the grievances to Dr. Andem and accepted Andem's responses (*id.* at 10–11). His formal grievance was delegated to Defendant Hamilton, who forwarded it to Andem for a response and returned it to Plaintiff without inquiring from Plaintiff about his injuries (*id.* at 11). Grievances were also received by Defendants Bailey and Nobles, and these Defendants "grossly disregarded" the grievances without inquiring from Plaintiff about his injuries (*id.*). Frustrated with the internal grievance procedure, Plaintiff sent a letter to the office of Diane Richtine of Health Services within the DOC (*id.*). Plaintiff's letter detailed the "adversity Plaintiff is enduring concerning an injury that is producing ongoing pain and discomfort as well as deteriorating health" (*id.*). Further, Plaintiff expressed his opinion that Andem's treatment (prescribing mild pain medication) was "less efficacious," and Plaintiff was requesting a more knowledgeable physician (*id.*). The Health Services office delegated responsibility for investigating Plaintiff's complaint to Defendant Gudino, who investigated Plaintiff's complaint but believed Andem's responses and denied Plaintiff's grievance (*id.* at 11–12). Plaintiff responded to Gudino's denial, informing Gudino that the information provided by Andem was incorrect and asking Gudino to investigate in a way other than by directly asking Andem for a response (*id.* at 12). Gudino "disregard[ed] Plaintiff's request, and simply refer[red] to the same avenue of inquiry" (*id.*).

On December 30, 2005, Plaintiff returned to sick call to have his medication refilled (*id.*). Nurse Whitehurst found a significant decrease in muscle tone of the left arm compared to the right and numerically recorded a two-and-a-half inch difference between the left and right arms (*id.*). Whitehurst informed Plaintiff that she would strongly advise Dr. Andem that Plaintiff needed to see a specialist (*id.*). On the morning of January 3, 2006, Plaintiff signed a transport/medical release for Lake Butler Medical Center, and an appointment was scheduled for January 24, 2006 (*id.*). Also on January 3, Plaintiff was placed in administrative confinement for fifteen days "for a minor rules violation," and Plaintiff was informed that his "pain medication refill was denied" (*id.*). Two days later, Plaintiff was "experiencing excruciating pain and discomfort" to his back and shoulder area;

at sick call he requested a refill of pain and inflammatory medication, which Andem "callously denied" (*id.*).

Plaintiff states that he had requested to see an orthopedic surgeon for his injuries, and Dr. Andem referred him to one (*id.* at 12–13). On January 24, 2006, Plaintiff saw the orthopedic surgeon, Dr. Esquivia-Munoz, who stated that Plaintiff's x-rays showed normal joint and bone structure and recommended referral to a spinal specialist (*id.* at 13). Plaintiff alleges that Andem exhibited "malicious vindictiveness" toward Plaintiff when he sent Plaintiff to the orthopedic surgeon knowing that the visit would be senseless because "proper referral would be for a spinal specialist" (*id.*). Further, even after Esquivia-Munoz's recommendation, Andem refused to refer Plaintiff to a spinal specialist, because Andem believed that Plaintiff's spinal injury was a result of an automobile accident Plaintiff had in 1986 (*id.*). However, Plaintiff alleges that Andem "is not qualified to make final policy concerning spinal injuries," because Andem "has no documenting [sic] training in this field of medicine" (*id.*). Andem's record shows only a specialty in Obstetrics and Gynecology, and Andem has had administrative action brought against him in the past by the Agency for Health Care Administration (*id.*).

Plaintiff estimates that he was seen by medical staff for his shoulder injury eighteen or nineteen times between November 2003 and January 2006 (*id.* at 10). He alleges that he was denied proper medical treatment during this time (*see id.* at 10–13) and as a result had developed chronic pain and discomfort, decreased range of motion, and visible atrophy in the affected areas (*id.* at 13).

Plaintiff claims a violation of the Eighth Amendment for denial of adequate medical care and cruel and unusual punishment (*id.* at 8, 14–15). Plaintiff states that Andem was deliberately indifferent to Plaintiff when Andem disregarded his nursing staff's evaluations, the recommendation that Plaintiff be referred to a spinal specialist, and Plaintiff's own descriptions (*id.* at 14). Defendants Hamilton, Bailey, Nobles, and Gudino exhibited deliberate indifference to Plaintiff's grievances, because they did not properly inquire or investigate Plaintiff's allegations regarding Andem (*id.*). Additionally, Plaintiff claims a violation of his due process rights under the Fourteenth Amendment for denial of adequate medical care (*id.* at 15). As relief, Plaintiff seeks compensatory damages of $75,000.00 against Defendant Andem and $50,000.00 jointly and severally against the other four Defendants (*id.* at 8, 16). Plaintiff also requests punitive damages of $40,000.00 against

Defendant Andem and $20,000.00 jointly and severally against the other four Defendants (*id.*). Finally, Plaintiff requests "any other releif [sic] as the court feels necessary, or Plaintiff is entitled to" (*id.* at 16).

Regarding Defendant Andem, Plaintiff has failed to state a constitutional claim. Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *Id.*

Stating an Eighth Amendment claim for inadequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.*

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see also* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm"). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to

constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need"). Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[1] A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (internal quotation omitted).

In the instant case, Plaintiff has alleged that Defendant Andem examined him in a cursory manner, refused to send Plaintiff to a spinal specialist, and disagreed with both the Plaintiff's and the nurses' medical assessments of Plaintiff's injury. None of these actions rises to the level of an Eighth Amendment violation. Regarding the objective prong of Eighth Amendment analysis, although Plaintiff may have demonstrated an objectively serious medical need, Plaintiff has not shown that Andem's response was so deficient as to constitute "an unnecessary and wanton infliction of pain." Indeed, Plaintiff admits that he was seen by medical personnel at least eighteen

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Case No: 5:06cv86/RS/EMT

times, and he states that he was given Tylenol and other anti-inflammatory and pain relieving drugs almost every time he visited Andem. Andem also referred Plaintiff to an orthopedic specialist and took at least one set of x-rays of Plaintiff's back and shoulder. Thus, Plaintiff cannot demonstrate that Andem's response to his medical need was constitutionally deficient.

Additionally, Plaintiff's allegations fail to satisfy the subjective prong of the Eighth Amendment analysis. While Plaintiff has alleged that Andem was "deliberately indifferent" to his medical needs, Plaintiff has not alleged that Andem knew of a risk of serious harm and disregarded that risk by conduct that is more than mere negligence. Plaintiff's chief complaints to Andem and the nursing staff concerned injuries to his upper back and shoulder resulting from a fall in the shower. Plaintiff alleges that those injuries resulted in pain and visible muscle atrophy, but Andem "consistently exercise[d] action of willful and wanton disregard to Plaintiff's complaints of chronic pain and discomfort occurring throughout the muscle tissue in the areas of the neck, shoulder, and upper arm as described to him" by Plaintiff and the nursing staff (Doc. 13 at 11). However, Plaintiff was consistently provided with pain medication. Moreover, the orthopedic specialist that examined Plaintiff, after his repeated complaints of pain, noted that the bones and joints in Plaintiff's shoulder area were normal (*id.* at 12). Although Plaintiff alleges that Andem should have then referred him to a spinal specialist, as recommended by the orthopedic specialist, Andem's decision to forgo a second referral was a medical judgment call that does not rise to the level of deliberate indifference. Even if Andem were negligent in failing to send Plaintiff to a spinal specialist, that negligence does not violate the Eighth Amendment. Similarly, Plaintiff's disagreement with Andem's assessments does not give rise to a claim of cruel and unusual punishment. In sum, Plaintiff admits that he received medical treatment and disputes only the adequacy of that treatment. Therefore, Plaintiff's Eighth Amendment claims against Andem are subject to dismissal.

Next, Plaintiff has failed to state a basis for liability as to Defendants Hamilton, Bailey, Nobles, and Gudino as he apparently seeks to hold them liable on a respondeat superior theory of liability. "It is well established that supervisory officials are not liable under [section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Supervisory liability may occur, however, "either when the supervisor

personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or "when a supervisor's custom or policy result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation marks and citations omitted); *see* Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

  Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)).

  In the instant case, Plaintiff does not allege that Defendants Hamilton, Bailey, Gudino, and Nobles participated in or in any way caused his allegedly inadequate medical care. Plaintiff admits that these Defendants reviewed his grievances and served them on Dr. Andem, who responded to each grievance. Essentially, Plaintiff's complaint is that these four Defendants did not substitute their own medical judgment (and that of Plaintiff's) for Andem's judgment. That substitution of judgment is not warranted simply because administrative action was brought against Andem in the

past. Therefore, the Defendants' actions do not rise to the level of a custom or policy of depriving Plaintiff of his constitutional rights. Therefore, Plaintiff's Eighth Amendment claims against Defendants Hamilton, Bailey, Gudino, and Nobles are subject to dismissal.

Finally, Plaintiff cannot state a due process violation. To the extent Plaintiff contends that Defendants' conduct violates the Due Process Clause in addition to the Eighth Amendment, the Due Process Clause is not applicable. If a constitutional claim is covered by a specific constitutional provision, such as the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See* County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998). Thus, substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id.* In the instant case, Plaintiff's claims are covered by the Eighth Amendment; therefore, he cannot state a claim under the Due Process Clause.

Additionally, to the extent Plaintiff might be suggesting that Defendants violated his due process rights by mishandling his grievances, Plaintiff cannot state a claim. In order to prevail on a due process claim, Plaintiff must first demonstrate that the DOC's inmate grievance procedure provided him with a constitutionally protected interest. *See* Baker v. Rexroad, 159 Fed. Appx. 61, 62 (11th Cir. Oct. 20, 2005), *cert. denied*, 2006 U.S. LEXIS 6513 (Oct. 2, 2006). In Baker, the Eleventh Circuit agreed with other circuits that have held that the provision of an administrative grievance process is not constitutionally mandated. *Id.* at 62–63 (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993) (per curiam) (holding that a state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate); Flick v. Alba, 932 F.2d 728, 729 (8thCir. 1991) (per curiam) (holding that federal prison administrative remedy procedures "do not in and of themselves create a liberty interest in access to that procedure," and that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.")).

Plaintiff has not made the threshold showing that he has a constitutionally protected interest in the grievance procedure. Therefore, Plaintiff's due process claim is subject to dismissal.

Accordingly, it is respectfully **RECOMMENDED**:

That this action be **DISMISSED WITH PREJUDICE** for Plaintiff's failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida this 20th day of November 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**